**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Cecilia Fournil, and Vista Holding Group, Inc., d/b/a Vista Insurance Group, ) ) ) ) | Civil Action No. 3:07-3836-JFA-PJG |
| Plaintiffs, ) ) | |
| v. ) ) | |
| Turbeville Insurance Agency, Inc., William Turbeville, individually, and Mark Ackerman, individually, ) ) ) ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) _____) ) | |
| Turbeville Insurance Agency, Inc., William Turbeville, and Mark Ackerman, ) ) ) ) | |
| Third-Party Plaintiffs, ) ) | |
| v. ) ) | |
| Alex Fournil and Vista Insurance Group, ) ) | |
| Third-Party Defendants. ) _____) | |

This employment matter is before the court pursuant to the third-party defendant Vista Insurance Group's motion to dismiss (Docket Entry 82) and the plaintiffs' motion for partial summary judgment (Docket Entry 108).[1] The court held a hearing on these motions on November

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) DSC. This Report and Recommendation is entered for the consideration of the assigned United States District Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

24, 2008. For the reasons set forth below, the court recommends that the motion to dismiss and the motion for partial summary judgment be granted.

## MOTION TO DISMISS

The plaintiffs, Cecilia Fournil and Vista Holding Group, Inc., d/b/a Vista Insurance Group, filed this action in the South Carolina Court of Common Pleas, Fifth Judicial Circuit. The defendants removed the case to this court pursuant to 28 U.S.C. §§ 1441 and 1331 due to the plaintiffs' allegations that the defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981a.

On July 14, 2008, Turbeville Insurance Agency, Inc., William Turbeville, and Mark Ackerman (collectively "the Turbeville Parties") filed a third-party complaint against Alex Fournil and Vista Insurance Group. (Docket Entry 55.) On July 29, 2008, the court amended the caption in this matter to include this complaint. Thereafter, on August 28, 2008, third-party defendant Vista Insurance Group filed a motion to dismiss the third-party complaint against Vista Insurance Group.

Vista Insurance Group asserts in its motion to dismiss that it is not an entity separate and distinct from the plaintiff Vista Holding Group, Inc., d/b/a Vista Insurance Group and, further, that the third-party claims against Vista Insurance Group are identical to the counterclaims against Vista Holding Group, Inc., d/b/a Vista Insurance Group. Additionally, Cecilia Fournil attests that while the name Vista Insurance Group, Inc. has been reserved with the South Carolina Secretary of State, no entity has been incorporated under that name and that Vista Insurance Group is a trade name used by Vista Holding Group, Inc. (C. Fournil Aff. dated June 27, 2008) (Docket Entry 82, Attachment 1 at 4); (C. Fournil Aff. dated Aug. 26, 2008) (Docket Entry 82, Attachment 2). Cecilia Fournil also asserts that Vista Insurance Group is not an "unincorporated entity separate and distinct from Vista Holding Group, Inc." (C. Fournil Aff. dated Aug. 26, 2008) (Docket Entry 82, Attachment

2 at 2.) Therefore, Vista Insurance Group contends, it should be dismissed as a separate third-party defendant to this matter.

In response, the Turbeville Parties argue that this motion is premature and that additional discovery is required. Further, they argue that Cecilia Fournil and Alex Fournil "operate an insurance agency that they hold out to the public as Vista Insurance Group" and point to several examples, such as the company website and the phone book. (Docket Entry 88 at 2.) Therefore, they claim, Vista Insurance Group is a legal entity capable of being sued under that name. (Id. at 2-3.)

While an entity has the capacity to be sued under its trade name rather than its legal name, the Turbeville Parties have presented no authority supporting the proposition that an entity may be sued separately under both its trade name and its legal or corporate name. See McCall v. Ikon, 611 S.E.2d 315, 318 (S.C. Ct. App. 2005) (holding that an entity may be sued under its trade name so long as it does not cause the corporation prejudice) (citing Long v. Carolina Baking Co., 8 S.E.2d 326, 332 (S.C. 1939)); Tri-County Ice & Fuel Co. v. Palmetto Ice Co., 399 S.E.2d 779, 782 (S.C. 1990) (agreeing that where "a corporation has acquired a name by usage an adjudication against it by the name so acquired is valid and binding" and permitting a judgment to be amended to change the name of the defendant to the corporation where the defendant was sued under the name it operates under and the corporation was not prejudiced) (quoting Tunstall v. Lerner Shops, 159 S.E. 386, 389 (S.C. 1931)). Further, the Turbeville Parties have not submitted sufficient evidence[2] that there is a separate entity called "Vista Insurance Group" that is distinct from the plaintiff, Vista

---

[2] While the Turbeville Parties rely on a copy of a check produced in discovery that bears the name "Vista Insurance Group, Inc.," the court fails to see how this fact supports their argument that *Vista Insurance Group* (without the "Inc.") should remain a third-party defendant in addition to being a plaintiff.

Holding Group, Inc., d/b/a Vista Insurance Group. Moreover, as the plaintiffs point out, Vista Insurance Group is already a party plaintiff against whom the Turbeville Parties have asserted counterclaims. Accordingly, the court recommends the dismissal of Vista Insurance Group as a third-party defendant from this matter.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

**A.     Background**

Cecilia Fournil was an employee of defendant Turbeville Insurance Agency, Inc. ("TIA"). She instituted this action following her last day of employment in August 2007 asserting, among other claims, that TIA failed to properly pay her commissions during the course of her employment. One of the matters at issue in this case is a counterclaim filed by the defendants seeking to enforce paragraph seven ("Paragraph Seven") of Cecilia Fournil's associates agreement dated October 6, 1999 with defendant TIA ("Associates Agreement"). Paragraph Seven of the Associates Agreement provides:

> In the event of disassociation with TIA and in consideration of training provided (including educational expenses)., [sic] subsidies paid and commission paid on business produced, etc., Barksdale,[3] for a period for two (2) years from and after termination, however caused, will not directly or indirectly, on her own behalf or as an employee, associate or co-owner with anyone else, solicit, attempt to obtain or accept any insurance business of any nature from any customer or account on the books of TIA or hire any employee of TIA at the time of her employment. This clause can be terminated by TIA in writing to Barksdale in the event of a mutual agreement.

As an initial matter, the plaintiffs refer to Paragraph Seven as a "non-solicitation" covenant or provision and have further asserted in other motions filed with the court that "there is no 'non-compete' provision at issue in this case." (Docket Entry 95 at 2.) The defendants contend that

---

[3] Barksdale is Cecilia Fournil's maiden name.

Paragraph Seven is a covenant not to compete that contains a provision restricting Cecilia Fournil from soliciting TIA customers. (See Docket Entry 98.) To the extent any such distinction of nomenclature is warranted, the court finds it to be immaterial.[4] Regardless of whether the covenant is referred to as a covenant not to compete or a non-solicitation covenant, non-solicitation covenants are held to the same legal standards as covenants not to compete. See Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 729-30 (D.S.C. 2007); Rockford Mfg., Ltd. v. Bennet, 296 F. Supp. 2d 681 (D.S.C. 2003).

**B.     Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest

---

[4] Nonetheless, to avoid semantic gamesmanship, the court will simply refer to the provision as "the covenant" or "Paragraph Seven."



upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).

The defendants contend that there are numerous factual disputes that would preclude the plaintiffs' motion for partial summary judgment.  Further, the defendants filed an affidavit pursuant to Rule 56(f) stating that they need additional discovery to respond to the plaintiffs' motion.  However, they have not pointed to any discovery they purportedly need to address the narrow issues raised by the plaintiff's motion as described below.  While factual disputes abound in this matter, none is material to the issue at hand.  The plaintiffs have specifically limited their motion for partial summary judgment to the issue of whether the covenant fails three of the five requirements to be valid under South Carolina law.  These arguments may be ruled upon based upon the language of the covenant itself.[5]  Accordingly, the court finds that this issue is ripe for a ruling.

## C.    Covenants

Covenants not to compete are generally looked upon with disfavor in South Carolina and are strictly construed against the employer.  Sermons v. Caine & Estes Ins. Agency, Inc., 273 S.E.2d 338, 339 (S.C. 1980) (citing Almers v. S.C. Nat'l Bank of Charleston, 217 S.E.2d 135 (S.C. 1975)).  Moreover, the burden is on the employer to establish the reasonableness of the covenant.  Delmar Studios of the Carolinas v. Kinsey, 104 S.E.2d 338 (S.C. 1958).  Whether or not a covenant not to compete is enforceable depends on whether it:

1. is necessary for the protection of the legitimate interest of the employer;
2. is reasonably limited in its operation with respect to time and space;
3. is not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood;

---

[5] These issues are before the court without prejudice to either party to challenge or defend the covenant based upon the remaining two requirements, as discussed below, or to seek discovery related to those two requirements should the plaintiffs' motion be denied.



      4.      is reasonable from the standpoint of sound public policy; and
      5.      is supported by valuable consideration.

Id. at 339 (quoting Oxman v. Sherman, 122 S.E.2d 559 (S.C. 1961)).  A covenant must satisfy all of these requirements to be enforceable.  The plaintiffs have moved for partial summary judgment with regard to the first, second, and fourth requirements listed above.[6]

In South Carolina, a contractual "[p]rohibition[] against contacting existing customers can be a valid substitute for a geographic limitation" and therefore may be enforceable.  Wolf v. Colonial Life & Acc. Ins. Co., 420 S.E.2d 217, 222 (S.C. 1992); see also Caine & Estes Ins. Agency, Inc. v. Watts, 293 S.E.2d 859 (S.C. 1982) (enforcing a covenant that required the former employee to share the commission he received with the former employer if the former employee sold insurance to a client of the former employer); Oxman, 122 S.E.2d 559 (enforcing a covenant that provided the former employee would not "induce any policyholder of the Company to terminate his or her insurance with the Company").  Consequently, the court must determine whether the scope of Paragraph Seven is reasonably limited in its operation with respect to existing customers of TIA. Wolf, 420 S.E.2d at 222.

In opposing the plaintiffs' motion, the defendants rely heavily on Collins Music Co., Inc. v. Parent, 340 S.E.2d 794 (S.C. Ct. App. 1986), which reversed a trial court's decision and upheld a covenant that prohibited the pirating of the former employer's customers.  Collins, however, is distinguishable from the covenant currently before the court in several important ways.  In Collins, the covenant restricted the defendant from soliciting customers whose names and addresses were specifically listed and attached to the employment agreement, as well as any customer locations acquired during his employment.  However, the covenant at issue in the case at bar does not restrict

---

[6] At the motions hearing, upon inquiry by the court, the plaintiffs clarified that they are not seeking summary judgment on the basis of the third or fifth requirements at this time.



Fournil solely from contacting or soliciting specific or even existing customers of TIA. Rather, the covenant as written restricts Fournil from soliciting anyone who was a customer at TIA during the time of her employment, which could potentially encompass former customers of TIA. Further, the Collins court specifically noted that under the provision at issue in that case, the employee was "free to solicit new customers to which he had not been assigned while in Collins' employ." Collins, 340 S.E.2d at 796. By contrast, the covenant at issue here prohibits Fournil from *accepting* business, even if she did not solicit it, from anyone who was a client of TIA during the time of her employment, even if they were not *her* client.[7]

The breadth of this covenant is sweeping. Fournil foreseeably could violate the covenant as written without even knowing she had done so. To avoid an inadvertent breach, Fournil would need a master list of every person and business that is or formerly was a client of TIA during the time of Fournil's employment—a list for which the contract makes no provision, and a list the defendants have refused to provide in discovery. Moreover, a covenant prohibiting Fournil from accepting business from customers who no longer do business with TIA advances no legitimate business interest of her former employer. Cf. Almers, 217 S.E.2d at 140 (finding that attempts to

---

[7] In further support of this reading of the covenant, William Turbeville, the drafter of the covenant, testified in his deposition that Paragraph Seven was written to prevent Fournil from soliciting or accepting persons or businesses who are clients TIA at any of its offices regardless of whether they were Fournil's client.

avoid competition do not alone protect a legitimate business interest). Accordingly, the court finds that, on its face, Paragraph Seven fails the first two requirements to be valid under South Carolina law.[8]

Even if the defendants were to accept a less restrictive interpretation of this covenant, the covenant would remain invalid. See Faces Boutique, Ltd. v. Gibbs, 455 S.E.2d 707, 709 (S.C. Ct. App. 1995) (stating that "[t]he apparent willingness of Faces to accept an interpretation of the covenant which would render the covenant proper in scope does not aid in the invalidity of the covenant as written."). While South Carolina has not outright rejected the "blue pencil test," an indivisible covenant may not be enforced even to a reasonable extent. See Rockford, 296 F. Supp. 2d at 687-89 (examining and discussing the application of the "blue pencil test" based on the law in South Carolina) (citing E. Bus. Forms, Inc. v. Kistler, 189 S.E.2d 22 (S.C. 1972)); Somerset v. Reyner, 104 S.E.2d 344 (S.C. 1958)). Paragraph Seven as written is indivisible; therefore, the court cannot "blue pencil" any overly broad provisions and enforce a more narrowly tailored one.    See

---

[8] The plaintiffs also contend that Paragraph Seven violates public policy in that it restricts a customer from choosing his or her insurance agent. They rely on several out-of-state cases in support of their public policy argument. See Waldeck v. Curtis 1000, Inc., 583 S.E.2d 266, 268 (Ga. Ct. App. 2003) (stating that a covenant that prohibited a former sales employee from accepting unsolicited business was "an unreasonable restraint because, in addition to overprotecting [the employer's] interests, it unreasonably impacts on [the employee] and on the public's ability to choose the business it prefers."); 1st American Sys., Inc. v. Rezatto, 311 N.W.2d 51, 59 (S.D. 1981) (stating that a covenant that prevents an former insurance employee from accepting customers from the former employer's business was overly broad and placed an undue burden on the former employee and the public); Evans Laboratories, Inc. v. Melder, 562 S.W.2d 62, 64 (Ark. 1978) (refusing to enforce a covenant that prohibited a serviceman from accepting former customers based on a determination that it was undue interference with the public's interest). The plaintiffs have not presented, nor has the court found, any South Carolina authority whatsoever supporting the notion that an insurance customer has a right to purchase insurance from a particular agent. Cf. Rule 5.6(a), RPC, Rule 407, SCACR (recognizing such a right with regard to attorneys). Accordingly, the court rejects the plaintiffs' argument that Paragraph Seven violates the public policy of South Carolina in this regard.



Rockford, 296 F. Supp. 2d at 687-89; E. Bus. Forms, Inc., 189 S.E.2d at 23-24; Somerset, 104 S.E.2d 344.

The court therefore concludes that Paragraph Seven as written is not reasonable in scope and does not protect a legitimate interest of the employer. Thus, Paragraph Seven is unenforceable as a matter of law.

## RECOMMENDATION

For the foregoing reasons, the court recommends that third-party defendant Vista Insurance Group's motion to dismiss (Docket Entry 82) and the plaintiffs' motion for partial summary judgment (Docket Entry 108) be granted.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 29, 2008
Columbia, South Carolina

*The parties' attention is directed to the important notice on the following page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).