IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Cecilia Fournil, and Vista Holding Group, Inc., d/b/a/ Vista Insurance Group, | ) ) ) ) | C/A No. 3:07-3836-JFA |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **ORDER ON MOTION TO DISMISS** |
| Turbeville Insurance Agency, Inc.; William Turbeville, individually; and Mark Ackerman, individually, | ) ) ) ) | **THIRD PARTY DEFENDANT AND MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | ) ) | |
| Turbeville Insurance Agency, Inc.; William Turbeville; and Mark Ackerman; | ) ) ) ) | |
| Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| Alex Fournil and Vista Insurance Group, | ) ) ) | |
| Third-Party Defendants. | ) ) | |

This matter is before the court for review of the magistrate judge's report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(A) and (B) (West 2006) and Local Rule 73.02(B)(2)(g) (D.S.C.). As the jurisprudence in this district outlines:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo

> determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

In this case, the magistrate's report and recommendation deals with two motions. The first is a motion filed by plaintiff/third-party defendant Vista Holding Group seeking its dismissal as a third-party defendant on the grounds that it is an already-named plaintiff in this lawsuit. See [dkt. # 82]. The second is the plaintiffs' motion for partial summary judgment on whether the non-competition provision of the employment agreement at issue in part of this case is enforceable. See [dkt. # 108]. The magistrate filed a report recommending that both motions be granted and the parties filed objections. For the reasons that follow, the court overrules the objections, adopts the magistrate's report and recommendation, and grants the motions.

I.      Factual/Procedural Background

This case arises out of a disagreement in the workplace. From 1999 to 2007, Plaintiff Cecilia Fournil ("Fournil") was employed by defendant Turbeville Insurance Agency, Inc. ("Turbeville"). Fournil was an insurance agent; her primary employment duties revolved

around helping people and businesses acquire insurance policies and assisting those customers in modifying or renewing insurance policies as their needs demanded.

A large part of Fournil's compensation from Turbeville was paid in the form of commissions. Turbeville as an agency receives a commission on policies written for its customers, and Turbeville pays its agents varying percentages of these commissions depending on the type of policy written and other factors. Many aspects of an agent's employment relationship, including the commission percentages Turbeville paid the agent, appear to have been set forth in what the parties refer to as the "associates agreement" an agent would execute prior to being hired by Turbeville. Central to part of this dispute is a portion of Fournil's associates agreement which contains a clause prohibiting her from soliciting and accepting certain types of insurance business should her employment with Turbeville terminate.

In 2006, Fournil received information causing her to believe that Turbeville was not paying her the percentages of commissions outlined in her associates agreement. She approached both defendant Mark Ackerman, a vice president at Turbeville, and defendant William Turbeville, the principal of the agency. The court will refer to all of the defendants collectively as "Turbeville." Discussions regarding the commissions continued for some time, and in 2007, the parties began discussing an arrangement where Fournil would purchase her book of business and end her employment at Turbeville. These discussions deteriorated, and Fournil's employment with Turbeville ended in August of 2007. Fournil

contends she was fired; Turbeville contends she resigned.

Fournil initiated this action in state court bringing several state law claims including breach of contract and breach of the covenant of good faith and fair dealing. Fournil additionally sought injunctive relief and a declaratory judgment that the non-compete portion of her employment agreement was unenforceable. Fournil amended her complaint twice. She added her new insurance agency, Vista Holding Group, Inc., d/b/a Vista Insurance Group ("Vista Holding" and "Vista Insurance"), as a plaintiff, added more state law claims, and additionally alleged violations federal law including intentional discrimination. Turbeville brought state law counterclaims including claims for misappropriation of trade secrets and breach of contract, and named Alex Fournil (Cecilia Fournil's husband) and Vista Insurance as third-party defendants. The case was removed to this court in November of 2007. See [dkt. # 1].

The magistrate issued a report and recommendation on two motions. The first is a motion to dismiss filed by third-party defendant Vista Insurance. See [dkt. # 82]. Recalling that Vista Holding d/b/a/ Vista Insurance is a named plaintiff in this action, Vista Insurance argues that naming it as a separate third-party defendant serves no useful purpose in this litigation. The second motion is the plaintiffs' motion for partial summary judgment which argues that the non-competition portion of Fournil's associates agreement is unenforceable. See [dkt. # 108]. The magistrate recommended that both motions be granted. See [dkt. # 146].

Turbeville filed objections to the magistrate's report and recommendation as to the motion to dismiss, see [dkt. # 159], and both sides filed objections to the report and recommendation on the motion for partial summary judgment, see [dkt. #'s 157, 160]. The court will address these objections in turn.

II.     Law/Analysis

*The Motion to Dismiss*

Turbeville appears to raise three objection to the magistrate's recommendation that Vista Insurance be dismissed as a third-party defendant. First, Turbeville argues that the magistrate has not cited any authority supporting dismissal. Second, Turbeville argues that the motion is premature in that Turbeville should be entitled to discovery on whether Vista Insurance is actually the d/b/a/ of Vista Holding. Third, Turbeville argues that dismissal preludes its ability to assert claims against Vista Insurance. None of these arguments are persuasive.

Vista Holding is a named plaintiff in this action, and by all accounts, Vista Insurance is merely the trade name of Vista Holding. That is how the caption of this case lists the plaintiffs, and that is what the limited evidence bears out. Rule 17(a)(1) of the Federal Rules of Civil Procedure provides that an action must be prosecuted in the name of a real party interest. By the plaintiffs' admission, Vista Insurance is the d/b/a/ of Vista Holding, and Cecilia and Alex Fournil, named parties in this suit, are the principals of Vista Holding. [dkt. # 160-2]. For claims against Vista Insurance, Vista Holding is the real party in interest.

5

Turbeville's arguments regarding discovery and preclusion are thus unpersuasive. Plaintiffs admitted that Vista Holding and Vista Insurance are but a single business entity. This is an entity against which Turbeville has asserted counterclaims, and Turbeville is entitled to as much discovery from a party litigant as the rules make available. Suing the trade name of Vista Holding as a third-party defendant does not grant Turbeville any additional discovery, and striking Vista Holding as a third-party defendant does not limit Turbeville in discovery. There is no sense in asking someone every question twice.

With these additions, the court overrules Turbeville's objection and adopts the magistrate's report and recommendation on the motion to dismiss.

*The Motion for Partial Summary Judgment*

(A)     Plaintiffs' Objection

On the motion for partial summary judgment, plaintiffs object to only one portion of the magistrate's report and recommendation. Although plaintiffs agree that the non-competition portion of the associates agreement is unenforceable for several reasons, plaintiffs contend that the magistrate erred in rejecting the argument that the covenant impermissibly prohibits members of the public from selecting the insurance agent of their choice. The court disagrees.

Under South Carolina law, whether a covenant not to compete is enforceable depends on whether the covenant (1) is necessary for the protection of the employer's legitimate interest; (2) is reasonably limited in operation with respect to time and space; (3) is not

6

unduly harsh and oppressive in limiting the legitimate efforts of the employee to earn a living; (4) is reasonable from the standpoint of public policy; and (5) is supported by valuable consideration. *Sermons v. Caine & Estes Ins. Agency, Inc.*, 273 S.E.2d 338, 339 (S.C. 1980) (quoting *Oxman v. Sherman*, 122 S.E.2d 559 (1961)). In this case, the magistrate reasoned that the non-compete provision at issue was not necessary for the protection of Turbeville's legitimate interest and was not reasonably limited with respect to time and space. Because the court agrees with these determinations, the court need not address the plaintiffs' argument regarding public policy.

The court therefore overrules the plaintiffs' objection to the magistrate's report and recommendation that the non-compete provision does not violate South Carolina's public policy by restricting the public's choice of insurance agents.

(B)     Turbeville's Objections

Turbeville argues that the magistrate improperly applied the burden in judging summary judgment, erred in concluding that the non-competition provision was unenforceable, and erred in concluding that the provision could not "blue penciled" to render parts of it enforceable. The court disagrees.[1]

---

[1] As a housekeeping matter, the court notes that Turbeville filed a reply in support of its objections on the issue of partial summary judgment, [dkt. # 166]. The rules of civil procedure do not allow a party to file a reply in support of objections to a magistrate's report and recommendation. See Fed. R. Civ. P. 72(b). Accordingly, the court did not consider this filing in reviewing the magistrate's report and recommendation. Were the court to consider the reply, its conclusions would nonetheless remain the same.

7

As a first matter, there is nothing suggesting that the magistrate applied an incorrect standard in judging summary judgment. The magistrate cited the appropriate standard for summary judgment, see [dkt. # 146, p.5], and proceeded to answer whether the non-competition provision of Fournil's associates agreement was unenforceable as a matter of law. The construction of ambiguous contracts sometimes involves factual disputes, see *South Carolina Department of Natural Resources v. Town of McClellanville*, 550 S.E.2d 299, 302-03 (S.C. 2001), and genuine disputes of material fact preclude the grant of summary judgment. But determining whether the language of a contract is ambiguous and construing an unambiguous contract are questions of law for the court. See *id.*; and *Pearson v. Church of God*, 478 S.E.2d 849, 853 (S.C. 1996). In this case, the magistrate viewed an unambiguous contract through the lens of South Carolina's standard for non-competition agreements and made a determination on whether the covenant at issue was enforceable. Nothing about this analysis was out of the ordinary.

The suggestion that the magistrate put the burden on Turbeville to demonstrate why the non-compete provision was enforceable is a mischaracterization of the magistrate's analysis. Plaintiffs presented the magistrate with legal arguments as to why the provision was not in compliance with South Carolina law, Turbeville presented arguments in opposition, and in the end, the magistrate judged that plaintiffs had the better of the argument. Turbeville is entitled to the benefit of the doubt on disputed factual questions, but not on the law as it applies to facts.

Moving to the magistrate's conclusions regarding enforceability, Turbeville objects to two conclusions which led the magistrate to rule that the covenant was invalid. Specifically, Turbeville argues that the covenant is necessary to protect its legitimate interest and is reasonably limited in time and space. Again, the court disagrees.

The relevant portion of Fournil's associates agreement contains a promise from Fournil not to "directly or indirectly . . . solicit, attempt to obtain or accept any insurance business of any nature from any customer or account on the books of [Turbeville] or hire any employee of [Turbeville] at the time of her employment." As the magistrate saw it, the non-compete provision was defective because it prohibits Fournil from contacting Turbeville's former clients as well as clients with which Fournil had no direct contact. The magistrate found that prohibiting such contacts was not related to any legitimate interest of Turbeville, and this conclusion was well-founded.

Underlying the jurisprudence in the area of non-compete agreements is the recognition that an employer has a legitimate interest in protecting against improper and unfair methods of competition. An employer is not, however, entitled to enforce an agreement preventing ordinary competition. A foreign case cited by Turbeville provides some persuasive insight. *Chambers-Dobson, Inc. v. Squier*, 472 N.W.2d 391, 399 (NE 1991) stands in part for the proposition that "[o]rdinarily, an employer has no legitimate business interest in postemployment prevention of an employee's use of some general skill or training acquired while working for the employer, although such on-the-job acquisition of general knowledge,

9

skill or facility may make the employee an effective competitor . . . ." The court begins therefore with the proposition that non-compete agreements are enforceable only when the competition they prevent is unfair and improper.

So how could Fournil compete against Turbeville unfairly? Turbeville points to data maintained in the insurance industry known as "expirations." This data includes what could be described as intimate knowledge of an existing customer's insurance profile including what policies they currently carry, the amounts of the premiums on those policies, the dates those policies expire, and the terms of those policies. Turbeville casts this information as a trade secret, and there is some support for this characterization. See *Atwood Agency v. Black*, 646 S.E.2d 882, 884-85 (S.C. 2007) (Pleicones, J., dissenting). But the court believes the better characterization of this information is as "goodwill." When insurance agents learn such customer information, they acquire it for their employer. Turbeville placed Fournil in a position where she acquired customer information for Turbeville's benefit. This information was relevant to the initiation or continuation of a customer's business with the Turbeville, and but for her employment with Turbeville, Fournil would not have learned this information. Were she to use this information to compete with Turbeville, Fournil would be taking information she compiled for Turbeville, information which was not available to the general public, and using it to her advantage and Turbeville's detriment. The court therefore believes one case Turbeville points to correctly supports the view that post-employment use of such information amounts to "siphoning [the employer's] goodwill." See *Squier*, 472

N.W.2d at 391.

The problem with the covenant at issue, however, is that it extends to situations where these goodwill-siphoning concerns do not exist. The covenant at issue is not only a prohibition of the active use of confidential information obtained while employed at Turbeville, it is an absolute bar to soliciting or accepting business from "any insurance business of any nature from any customer or account on the books of [Turbeville] . . . at the time of her employment." Soliciting business from former clients of Turbeville's is not unfair or improper; Turbeville has no relationship with these customers whatsoever. It also does not seem improper or unfair for Fournil to solicit or accept business from current clients of Turbeville provided that she does not trade on Turbeville's goodwill. This is not to say that an enforceable non-compete agreement must be limited to a prohibition on the use of confidential information to solicit business — South Carolina law supports the view that a limit on accepting business from a former employer's clients is enforceable when the business was serviced by the former employee. *Caine & Estes Ins. Agency v. Watts*, 293 S.E.2d 859 (S.C. 1982). This is because the former employee's relationship with customers is part of his employer's goodwill as well. But what the magistrate recognized in this case is that the covenant at issue here extends to areas where Turbeville has no legitimate interest in preventing competition. This conclusion is sound.

Two caveats bear mentioning. First, the court has discussed the problems of Turbeville's interest in confidential client information and personal relationships, and there

is nothing in the evidence suggesting that Fournil's employment with Turbeville furnished her with any *other* type of information that would allow Fournil to compete against Turbeville unfairly if she left. This case is thus different from *Volunteer Fireman's Insurance Services, Inc. v. CIGNA Property and Casualty Insurance Agency*, 693 A.2d 1330 (PA 1997), relied upon by Turbeville. That case did not deal with "a typical independent agent selling a standard insurance policy," but a situation where one party developed a specialized product program and granted an exclusive license to market and sell that product to another party. *Id*., at 1337. Because of the sales agent's intimate knowledge of the unique product created by the developer, the developer would be substantially injured if the sales agent was allowed to enter the competitive market as both a producer and seller immediately after the license relationship terminated. *Id*., at 1338. There does not appear to be anything of this sort at play in this case.

Second, although Turbeville asserts that it should be entitled to discovery on the customer information of which Fournil is aware, the court does not find this argument persuasive. Fournil's employment at Turbeville either gave her access to confidential information and personal contacts with all of Turbeville's clients or it did not. Fournil has argued that she does not have access to this information, and the limited record supports this determination. See [dkt. # 160-3, p.19].

Turbeville's final objection is to the magistrate's conclusion that the unenforceable portions of the covenant could not be "blue penciled" to render the covenant enforceable.

12

The magistrate's analysis on this issue is sound, and the court adopts that analysis with one addition: In *Stonhard v. Carolina Flooring Specialists, Inc.*, 621 S.E.2d 352 (S.C. 2005), the South Carolina Supreme Court held that a court could not use "blue penciling" to add a term not previously included in a non-compete agreement. This covenant prohibits Fournil from accepting business from any current and former clients of Turbeville. It would take a great bit of judicial redrafting to work the language in the manner Turbeville proposes.

These conclusions should not be given more weight than they are due. Turbeville has included equitable claims in this lawsuit, and trading on Turbeville's goodwill is undoubtedly part of the theory of those claims. Here, the court merely overrules Turbeville's objections to the magistrate's report and recommendation that the non-compete provision of Fournil's associates agreement is unenforceable.

III.    Conclusion

For the foregoing reasons, the report and recommendation of the magistrate is incorporated herein by reference and adopted as the order of this court. The parties' objections are overruled, and the pending motions to dismiss and for partial summary judgment are granted.

IT IS SO ORDERED.

*/s/ Joseph F. Anderson, Jr./*

March 2, 2009                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                         United States District Judge